It CARAWAY, J.
Following a shooting that occurred in his apartment, the defendant was charged with second degree murder of an acquaintance. He was tried and convicted by a jury and sentenced to the mandatory punishment of life in prison without benefits. The defendant now appeals challenging the sufficiency of the evidence. The defendant’s conviction and sentence are affirmed.

Facts

In the evening hours of December 23, 2000, the defendant, Jeffery Michael Miller (“Miller”), was in his apartment “hanging out” with Quin Moody, “Little James” and “Dray.” The men were watching a movie when the victim, Warren “Hank” Hewitt (“Hewitt”) arrived and joined them. Miller and Hewitt went to high school together. Carrying a wine bottle, Hewitt sat down on the couch next to Miller and was noticeably intoxicated. He was loud and obnoxious during the movie. Later, Dray and Little James left the apartment and did not return.
*242 Moody was the only eyewitness who testified at trial about the confrontation that led to Hewitt’s death. Hewitt and Miller began a friendly session of “trash talking,” boasting about who was better than the other. During that time, Miller’s next door neighbor, Kendra Dickson, called. Miller told her that he would be over later because he was getting ready to “slap box this dude”[1] and started laughing.
| gHewitt and Miller were large men, both approximately 250 pounds. While slap boxing, the victim swung and fell. He got back up and became a little more aggressive. Hewitt then hit Miller with a closed fist in Miller’s face. Miller told the victim to stop and at that point he pinned Hewitt down and asked him if he meant to fight for real. Heudtt told the defendant to get up off him, and Moody also told both men to “cut it out.”
Miller then got up off the victim and went to the kitchen to retrieve his gun. He emerged from the kitchen pointing the gun but the victim was steadily coming towards him. Hewitt was unarmed. The two exchanged words. Wh'en they were approximately eight feet apart, Miller shot the victim and he fell to the floor.
Miller then went to his next-door neighbor’s apartment and told her to call 911 because he had just shot and killed “this guy.” While Dickson was on the phone with police, Miller went back to his apartment. Dickson and Moody, who had left Miller’s apartment and returned to his own apartment next door, then heard several gunshots. Miller returned a second time to Dickson’s apartment with his arms extended and told her to take the gun from him. Dickson took the gun from Miller. She and Miller went back over to his apartment where Dickson observed the dead body of Hewitt. Miller then walked over to the body and began beating the body in the face with his fists and shouting at Hewitt. Dickson calmed Miller down and when law enforcement arrived Miller told them that he and Hewitt were slap boxing and Hewitt gave him a closed fist lick in his face. He admitted retrieving his gun out of the kitchen and, shortly thereafter, shooting the victim.
|sThe coroner testified that the toxicology screen revealed a “very large amount” of alcohol in the victim’s body, “even a fatal amount.” However, this did not cause the victim’s death, since some persons can tolerate much higher levels of alcohol than others. Nevertheless, its effect on the victim would have impaired his ability to act.[2] Moody confirmed that Hewitt’s speech was slurred throughout his visit in the apartment. The coroner testified that the first gunshot wound entered the victim’s jaw and passed downward through his neck into his left lung. That wound alone would have resulted in death but would not have caused immediate death. On the other hand, eight other wounds resulted from bullets traveling upward through the victim’s body. Apparently, these bullets were fired during the second shooting incident, as the body lay on the floor.
After trial, the jury found Miller guilty of second degree murder. He was sentenced to the mandatory punishment of life in prison without the benefit of probation, parole, or suspension of sentence. Miller now appeals his conviction and sentence.

Discussion

Miller raises three assignments of error that all relate to the sufficiency of the *243 evidence. He argues that the trial court erred in including the aggressor doctrine, La. R.S. 14:21, in the jury charge and in denying his motions for post-judgment verdict of acquittal and new trial. Miller further asserts that the evidence shows that Hewitt was the aggressor so that the state did not prove that the homicide was not perpetrated in self-defense. Alternatively, he | ¿argues that the killing occurred in the heat of passion and the conviction should be reduced to manslaughter.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Taylor, 621 So.2d 141 (La.App. 2d Cir.1993), writ denied, 93-2054 (La.2/11/94), 634 So.2d 371. Specific intent is a fact issue to be determined by the trier of fact. State v. Jasper, 28,187 (La.App.2d Cir.6/26/96), 677 So.2d 553, 559, unit denied, 96-1897 (La.2/21/97), 688 So.2d 521 (internal citations omitted).
A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing, is necessary to save himself from that danger. La. R.S. 14:20(1). A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he ^withdraws from the conflict in good faith and in such .a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.. La. R.S. 14:21.
When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State in re D.P.B., 2002-1742 (La.5/20/03), 846 So.2d 753; State v. Gaddis, 36,661 (La.App.2d Cir.3/14/03), 839 So.2d 1258.
La.C.Cr.P. art. 821 provides that a motion for post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
La.C.Cr.P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence, i.e. that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App.2d Cir.6/22/94), 639 So.2d 391, writ denied, 94-1981 (La.12/16/94), 648 So.2d 387, citing Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir.1993), writ denied, 93-2899 (La.2/11/94), 634 So.2d 372; State v. Thom *244 as, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, 00-3070 (La.10/26/01), 799 So.2d 1150, 01-2087 (La.4/19/02), 813 So.2d 424.
 The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court’s authority to review questions of fact in a criminal case is limited to the sufficieney-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const, art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App.7 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
Momentarily leaving aside the second shooting incident, the evidence showed beyond a reasonable doubt that Miller’s fúst fatal shot was not in self-defense. Miller was as large a man as the victim and had been employed as a bouncer at a night club. Miller was sober and the victim was not. Although Hewitt had been loud and boisterous at the apartment throughout the evening, he was not threatening to Miller or the others. Moody testified that the two friends’ confrontation “started off as a little friendly slap box.” After Hewitt fell down during the boxing match, he may have deliberately hit Miller with his fist. Yet, Miller was able to take the fight to Hewitt, pin him down and warn him that the blow with his fist had gone too far. Regardless of the nature of the men’s confrontation at that point, Miller could not reasonably believe that he was in imminent danger of losing his life or receiving great bodily harm. Miller’s friend Moody was present to discourage the fight and help control the drunken Hewitt. Miller was able to withdraw from the fight and exit the room without Hewitt stopping or further hitting him. This is compelling evidence that self-defensive action was not required. Nevertheless, Miller then injected a deadly weapon into the fray, and from that act, the jury could reasonably conclude that Miller had assumed the role of aggressor. The ruling of the trial court charging the jury with the ^aggressor doctrine provision was therefore correct, and Miller, as the aggressor, could not claim self-defense.
Neither did the evidence show that Miller’s demeanor at the time of the first shot was one of a frantic person or a person who acted in the heat of passion. The offense of manslaughter is defined as a homicide that would be second degree *245 murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31. The existence of “sudden passion” and “heat of blood” are not elements of the crime of manslaughter, but rather are factors in the nature of a defense which may reduce the grade of homicide. Provocation is a question of fact to be determined by the trier of fact. Thus, the issue presented by this argument is whether or not a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by the defendant by a preponderance of the evidence. State v. Lombard, 486 So.2d 106 (La.1986); State v. Miller, 36,003 (La.App.2d Cir.7/25/02), 824 So.2d 1208, 1215, writ denied, 02-2480 (La.6/27/03), 847 So.2d 1253.
Well before the shooting, the initial pain of the victim’s punch to Miller’s face was passed. Miller had pinned the victim, stopping his outburst and demonstrating control. Any heat of passion caused by the punch to the face clearly ended and was always insufficient to deprive Miller of self-control and cool reflection. Nevertheless, in a non-frantic action, Miller went to the kitchen and returned with the gun that led to the killing. From this 13view of the evidence the jury could have found that the mitigating factors for manslaughter were not established by the defendant.
Next, Miller argues that the trial court erred in denying his pretrial motion in limine. In the motion, Miller asserted that the evidence of the second set of shots was irrelevant given the fatal nature of the first shot.- He further argues that the evidence should be excluded because the state failed to present evidence at the hearing that the second set of shots were a substantial factor in the death of the victim.
Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. La. C.E. art. 403. The trial court has been given great discretion in determining whether evidence is relevant, and absent a clear abuse of discretion, rulings on relevancy of evidence should not be disturbed on appeal. State v. Legrand, 02-1462 (La.12/3/03), 864 So.2d 89.
Evidence of other crimes, wrongs or acts may be introduced when it relates to conduct, formerly referred to as res gestae, that constitutes an integral part of the act or transaction that is the subject of the present proceedings. La. C.E. art. 404 B(l). Res gestae events constituting other crimes evidence are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. A close proximity in time and location is required |10between the charged offense and the other crimes evidence to insure that the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. State v. Taylor, 01-1638 (La.1/14/03), 838 So.2d 729, cert denied, — U.S. --, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004). Res gestae evidence in Louisiana incorporates a rule of narrative completeness without which the state’s case would lose its momentum and cohesiveness, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. Id.
*246 In this case, the second set of shots formed an integral part of the act that is the subject of the present charge. Without it, the state would not be able to present a cohesive and complete picture of what happened. The proof of the lolling of the victim required an explanation of the multiple gunshot wounds. To discuss the cause of death without explaining the source of the other wounds might raise the specter that a second assailant was involved. The presentation of the evidence of the second shooting, therefore, was clearly relevant for the presentation of the state’s case. This assignment is therefore without merit.

Decree

For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Slap boxing consists of testing one’s reflexes to see if you can slap the other opponent before he blocks the slap.

. The coroner's report shows that the victim’s blood alcohol level was 0.452%.